■ ERA JOSEPH GREEN REAL ESTATE, INC., et al., Appellants, v RON DAUBERT, Doing Business as RON DAUBERT CONSTRUCTION, Respondent. (And a Third-Party Action.)—Mercure, J. Appeals (transferred to this Court by order of the Appellate Division, Second Department) (1) from an order of the Supreme Court (Peter Patsalos, J.), entered January 8, 1991 in Orange County, which, *inter alia,* granted defendant's motion for summary judgment dismissing the complaint, and (2) from the judgment entered thereon.

In 1987, Marc Appel and Victoria Appel contacted plaintiff Edgar Minneker, a licensed real estate salesperson with plaintiff ERA Joseph Green Real Estate, Inc. (hereinafter ERA), indicating their interest in purchasing a residential building lot. During the course of Victoria Appel's viewing of several parcels, she inquired of Minneker as to the names of potential builders, and Minneker recommended defendant and showed Victoria some of the houses that defendant and his "partner", Nick Zaharchuck, were building.* Ultimately, the Appels decided to purchase a lot in a four-lot subdivision owned by John Sanford and Candice Sanford, which had been listed for sale with ERA. In the meantime, third-party defendant, also a client of Minneker, decided to purchase the entire Sanford subdivision. As a result, two separate contracts were negotiated by Minneker.

By agreement dated April 26, 1987, third-party defendant contracted to purchase the entire Sanford parcel, and an August 6, 1987 contract provided for third-party defendant's sale to the Appels of subdivision lot No. 3 and a residence to be constructed on it, the price and design of which was to be determined upon the subsequent submission of house plans by the Appels. The agreement between third-party defendant and the Appels also provided for a 4% commission to be paid by third-party defendant to ERA at closing. Due to alleged title defects, third-party defendant never took title to the Sanford subdivision and, of course, did not convey lot No. 3 to the Appels or construct the proposed residence upon it. During the latter part of August 1987, the Appels also discussed with Minneker the construction of a medical office building on another lot which they already owned. According to Minneker, he recommended that the Appels engage defendant as a builder, as a result of which defendant allegedly agreed to pay ERA a commission equal to 4% of the cost of the building to be constructed.

Subsequently, plaintiffs commenced this action seeking to recover, *inter alia,* (1) the "normal and reasonable commission [of 10%] of the gross cost of construction * * * of the Appel's home", and (2) as the result of plaintiffs' introduction of defendant to the Appels "as builders *[sic]* qualified in commercial construction * * * the usual and reasonable commission [of 10%] based on the gross selling cost of the construction [of

---

* It appears from the record that defendant and Zaharchuck did not do business as partners but were actually officers and sole owners of third-party defendant, Country Classic Homes, Inc.

the office building]". Following joinder of issue, institution of the third-party action for indemnification and discovery, defendant moved for summary judgment dismissing the complaint. Supreme Court granted the motion and plaintiffs appeal.

We affirm. Turning to the cause of action arising out of the agreement for the sale of lot No. 3 in the Sanford subdivision, we first note that third-party defendant and not defendant entered into the agreement with the Appels, a fatal infirmity not addressed by Supreme Court. Second, the contract between third-party defendant and the Appels makes no provision for the price of the lot or of the residence to be built upon it or for the time or manner of payment or delivery of possession. Absent a meeting of the minds on these and other essential matters, no commission was earned (see, 11 NY Jur 2d, Brokers, § 111, at 473). Third, although it is the general rule that a broker who produces a ready, willing and able buyer is entitled to a commission even if the contract fails due to a defect in the vendor's title (Willard v Mercer, 83 AD2d 656, 657, affd 58 NY2d 840; see, Rusciano Realty Servs. v Griffler, 62 NY2d 696, 697; Lane—Real Estate Dept. Store v Lawlet Corp., 28 NY2d 36, 42-43; Trenga Realty v Wedgewood Homes, 138 AD2d 875), the rule does not apply in a case where, as here, the broker is aware of the title defect (see, 11 NY Jur 2d, Brokers, § 126, at 497-498; cf., Van Vliet & Place v Gaines, 249 NY 106, 110-111). Plaintiffs, having negotiated the proposed sale of the Sanford subdivision to third-party defendant, were intimately aware of the fact that the latter did not have title to the property at the time it entered into the contract with the Appels. Of course, third-party defendant's failure to take title to the property, due to no demonstrated fault on its part, precluded its performance under the contract with the Appels.

The second cause of action, alleging plaintiffs' entitlement to a commission as the result of Minneker's introduction of defendant to the Appels, is likewise meritless. Although it is alleged that those parties subsequently entered into a contract for the construction of an office building, there is no claim that plaintiffs were the procuring cause of the agreement. In fact, at the time Minneker brought defendant and the Appels together and claimed entitlement to his commission, no architect's plans or drawings were available and no discussion was had concerning the scope or cost of the project. It is fundamental that a real estate broker does not earn a commission by merely supplying a name. Rather, as already stated, the

broker must be the procuring cause of a meeting of the minds between the parties *(see, Kule Resources v Reliance Group,* 49 NY2d 587, 591-592; 11 NY Jur 2d, Brokers, §§ 111, 122, at 473, 490).

Weiss, P. J., Crew III, Mahoney and Casey, JJ., concur. Ordered that the order and judgment are affirmed, with costs.