■ L. BARRY FRENCH, Appellant-Respondent, v RICHARD A. AHLSTROM, Respondent-Appellant. [612 NYS2d 458] —Crew III, J. Cross appeals from an order of the Supreme Court (Hughes, J.), entered June 19, 1992 in Albany County, which, *inter alia,* granted plaintiff's motion for summary judgment dismissing the counterclaims and granted defendant's cross motion for summary judgment dismissing the complaint.

Defendant is the owner of a newspaper and commercial printing business located in Albany County. In early 1988 defendant contemplated retiring, and on August 26, 1988 defendant and plaintiff executed a listing agreement naming plaintiff as the agent for the sale of defendant's business. The parties also compiled a written prospectus setting forth the terms of the sale. Although the sale price was set at $1.2 million, this figure did not include the accounts receivable of the business, which defendant valued at approximately $125,-000.

Thereafter, on or about October 1, 1988, plaintiff received a letter from Henry White, who proposed to purchase defendant's business for $1 million. The $1 million figure, which included the accounts receivable, consisted of a $500,000 cash payment and $500,000 for a consulting agreement/covenant not to compete payable over 10 years for a discount rate of 8%. Defendant's stated reasons for rejecting White's proposal were that it did not meet his terms of sale and that he was, at

that time, engaged in discussions with one of his employees who, according to defendant, was suggesting a transaction on terms more favorable than White had proposed.

Although other individuals apparently expressed interest in defendant's business, no sale was consummated and, on or about March 3, 1989, defendant gave plaintiff notice of his intention to terminate plaintiff's services. Plaintiff thereafter demanded a commission based upon White's proposal and when defendant refused, plaintiff commenced this action seeking a brokerage fee. Defendant answered and counterclaimed contending, *inter alia,* that plaintiff breached his fiduciary duty to keep the sale of defendant's business confidential. Following discovery, plaintiff moved for summary judgment on his first cause of action for breach of contract and for dismissal of defendant's affirmative defenses and counterclaims. Defendant cross-moved for summary judgment on his counterclaims and for summary judgment dismissing plaintiff's complaint. Supreme Court granted plaintiff's motion for summary judgment dismissing defendant's counterclaims and granted defendant's cross motion for summary judgment dismissing plaintiff's complaint. These cross appeals followed.[1]

We affirm. "It is well settled in this State that 'in the absence of an agreement to the contrary, a real estate broker will be deemed to have earned his commission when he produces a buyer who is ready, willing and able to purchase at the terms set by the seller' " *(Brodsky v Gazzola,* 183 AD2d 1051, 1052, *lv denied* 80 NY2d 758, quoting *Lane—Real Estate Dept. Store v Lawlet Corp.,* 28 NY2d 36, 42; *see, Mecox Realty Corp. v Rose,* 202 AD2d 404). In other words, a broker's commission is not dependent upon performance of the real estate contract unless there exists an agreement to that effect *(see, Mecox Realty Corp. v Rose, supra).*

Assuming, without deciding, that no contrary agreement existed here,[2] we are of the view that there was no meeting of

1. In his motion for summary judgment, plaintiff also sought a brokerage fee for an offer made by John Hughes. On appeal, however, plaintiff has confined his arguments to his dealings with White and, hence, any claim for a commission based upon the Hughes offer is deemed abandoned *(see, First Natl. Bank v Mountain Food Enters.,* 159 AD2d 900, 901).

2. Defendant also contends that plaintiff is not entitled to a commission under the terms of the listing agreement which provides, in relevant part, that "[t]he fee will be paid at the time the sale is closed". We note that similar language has been held to be sufficiently ambiguous to raise a question of fact as to "whether the parties intended to make the commission contingent upon a closing or whether the plaintiff earned its commission

the minds between White and defendant regarding the essential terms of the sale and, hence, plaintiff is not entitled to a commission *(see generally, Maurice B. Cunningham, Inc. v Denckla,* 96 AD2d 580, *lv denied* 60 NY2d 556; *Day Realty v Farkas,* 75 AD2d 783). Plaintiff has accepted, for purposes of this motion, the truth of the statements made by defendant during the course of his examination before trial, and such testimony plainly establishes that plaintiff did not produce a buyer who was ready, willing and able to meet defendant's terms of sale. As noted previously, the $1 million figure proposed by White was less than the price set forth in the prospectus and did not include an amount for the accounts receivable. White's proposal also contained several contingencies, and defendant testified that both the cash payment and consulting agreement components of the proposal were insufficient. We therefore conclude that plaintiff is not entitled to a commission based upon White's proposal and, as such, defendant's cross motion for summary judgment dismissing plaintiff's complaint was properly granted.

In reaching this conclusion, we reject plaintiff's assertion that it was defendant's refusal to negotiate with White that prevented plaintiff from earning his commission. In each of the cases relied upon by plaintiff *(see, e.g., Westhill Exports v Pope,* 12 NY2d 491; *Kirk Assocs. v McDonald Equities,* 155 AD2d 281, *lv denied* 75 NY2d 706; *Trylon Realty Corp. v Di Martini,* 40 AD2d 1029, *affd* 34 NY2d 899), either the broker had produced a buyer who was willing to meet the defendant's terms or the buyer and the defendant had agreed upon many of the essential terms of sale, i.e., there had been a meeting of the minds. Such was not the case here *(see, e.g., Lane—Real Estate Dept. Store v Muchnick,* 145 AD2d 469, 470 ["(t)he plaintiff's contention that the defendant acted wrongfully or in bad faith by terminating the negotiations with the prospective purchaser is not supported by the record since no agreement had been reached between the parties"]).

Finally, turning to defendant's cross appeal, we are of the view that Supreme Court properly dismissed defendant's coun-

---

when it produced a ready, willing and able buyer, with payment of the commission deferred until the closing" *(Greiner-Maltz Co. v Kalex Chem. Prods.,* 142 AD2d 552, 552-553 [brokerage contract provided that " '(a)ll fees are payable in full upon closing' "]). This issue need not detain us, however, for even assuming that the listing agreement executed by the parties is interpreted merely as providing for when plaintiff's commission would be paid, as opposed to earned, plaintiff has failed to establish his entitlement to a commission on this record.

terclaims. Under the terms of the listing agreement, plaintiff was required to "exert every effort to keep this sale as confidential as possible, consistent with sound selling procedures". Although defendant contends that plaintiff breached the terms of the listing agreement and his fiduciary duty to defendant by advertising the sale of defendant's business in a trade journal, we cannot agree. Notably, the advertisement in question did not identify defendant's business by name. Additionally, although the identity of the business was disclosed by a subsequent article appearing in the *Capital District Business Review,* it was defendant who advised the reporter who wrote the article that his business was for sale. Moreover, defendant has, in our view, failed to tender sufficient proof in admissible form to establish a causal connection between the advertisement placed by plaintiff and the loss of business and other damages defendant allegedly sustained.

The parties' remaining contentions have been examined and found to be lacking in merit.

Mikoll, J. P., Mercure, Weiss and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, without costs.