■ COLDWELL BANKER VILLAGE GREEN REALTY, Respondent, v PATRICIA PILLSWORTH, Appellant. [818 NYS2d 868]—

Crew III, J. Appeal from an order of the Supreme Court (Bradley, J.), entered May 17, 2005 in Ulster County, which, inter alia, granted plaintiff's motion for summary judgment.

In May 2003, defendant, the owner of a bed and breakfast establishment known as the Black Lion Inn and located in the City of Kingston, Ulster County, entered into a listing agreement with plaintiff to sell the premises. Pursuant to the terms of that listing agreement, defendant agreed to pay plaintiff "a brokerage fee of 6% of the selling price (as herein negotiated between seller [and] broker) if a purchase offer is accepted by [defendant] during the [agreed upon] period"—namely, May 7, 2003 and November 15, 2003. During that period, plaintiff produced a buyer, Bosa Kosovic, who tendered a purchase offer that was accepted by defendant in September 2003. The purchase price set forth in that offer was $1 million. A contract of sale, again setting forth a purchase price of $1 million, was executed by Kosovic and defendant in November 2003, and a

closing was scheduled for January 5, 2004. In the interim, the premises were destroyed by fire, and Kosovic subsequently rescinded the contract pursuant to General Obligations Law § 5-1311.

Plaintiff thereafter commenced this action by summons with notice and moved for summary judgment in lieu of complaint seeking to recover the commission allegedly owed. The parties agreed to treat plaintiff's motion pursuant to CPLR 3213 as one for summary judgment under CPLR 3212, and defendant opposed plaintiff's motion and cross-moved for summary judgment dismissing the complaint. Supreme Court found in favor of plaintiff, granting its motion for summary judgment and denying defendant's cross motion. This appeal by defendant ensued.

We affirm. The case law makes clear that "a real estate broker is entitled to a commission upon procuring a buyer who is ready, willing and able to accept the terms set by the seller" (*Pacifico v Plate*, 183 AD2d 986, 987 [1992]; *see French v Ahlstrom*, 204 AD2d 861, 862 [1994]; *Mecox Realty Corp. v Rose*, 202 AD2d 404 [1994]; *Cornelia & Broad Sts. v Chase*, 186 AD2d 341, 341-342 [1992]; *Stolen v Bruaz Realty Corp.*, 173 AD2d 927, 928 [1991]). Thus, in the absence of an agreement to the contrary, the broker's right to a commission is not contingent upon performance of the underlying real estate contract (*see Mecox Realty Corp. v Rose, supra; Stolen v Bruaz Realty Corp., supra* at 928-929), receipt by the seller of the sale price (*see Pacifico v Plate, supra* at 987), transfer of title (*see Paul J. Boyer Realty v Perry*, 208 AD2d 1024, 1024-1025 [1994]) or even the formal execution of a legally enforceable sales contract (*see Realty Invs. of USA v Bhaidaswala*, 254 AD2d 603, 604 [1998]).

Although defendant advances a number of novel arguments as to why she should not be obligated to pay plaintiff's commission, we find defendant's contentions to be unavailing. As noted previously, the listing agreement provides that defendant "agrees to pay to [plaintiff] a brokerage fee of 6% of the selling price (as herein negotiated between seller [and] broker) if a purchase offer is accepted by [defendant] during the [agreed upon] period," and it is undisputed that defendant accepted such a purchase offer during the relevant time period. Simply put, there is absolutely nothing in the listing agreement or the addenda thereto that conditions plaintiff's commission upon a transfer of title, and defendant cannot utilize the provisions of the subsequently executed sales contract, wherein defendant agreed to pay plaintiff's commission "if and when title closes," as a bootstrap to avoid her obligations under the clear and

unambiguous provisions of the listing agreement (*see Realty Invs. of USA v Bhaidaswala, supra* at 604; *Paul J. Boyer Realty v Perry, supra* at 1024-1025; *Cornelia & Broad Sts. v Chase, supra* at 342).*

Equally unpersuasive is defendant's attempt to invoke the following provision of the listing agreement:

"During the term of this Agreement: . . .

"5. Seller(s) agrees to accept a binder or purchase contract contingent on the purchaser's ability to obtain conventional financing providing any other contingencies in the binder or purchase agreement are acceptable to the Seller(s)."

Relying upon such language, defendant now argues that plaintiff was not entitled to a commission until any and all contingencies contained in the purchase offer were satisfied. Contrary to defendant's assertion, the foregoing provision plainly speaks only to the type of purchase offer that defendant was obligated to accept and the contingencies that could be included therein; it in no way addresses, much less alters, plaintiff's otherwise unqualified right to a commission upon producing a ready, willing and able buyer and, in our view, any finding to the contrary would require a tortured reading of the listing agreement. Defendant's remaining contentions, including her assertion that plaintiff is entitled to only a fraction of the sought-after commission, have been examined and found to be lacking in merit.

Cardona, P.J., Spain, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.

---

* Had such language appeared in the listing agreement, there arguably would be a question of fact as to whether the parties intended plaintiff's commission to be earned upon closing or, alternatively, earned upon the procurement of a ready, willing and able buyer with the payment of such commission deferred until closing (*see Greiner-Maltz Co. v Kalex Chem. Prods.*, 142 AD2d 552, 552-553 [1988]). Here, however, the quoted language appears only in the contract of sale prepared by counsel and to which plaintiff was not a party.